# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 308-09966 |
| SFW ENTERPRISES NASHVILLE, INC. | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) |
| DDR SAU NASHVILLE WILLOWBROOK, LLC, | ) ADV. NO. 311-0511A |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| R&M IMAGES, INC., d/b/a CICI'S PIZZA, | ) |
| | ) |
| Defendant. | ) |

_____

## MEMORANDUM OPINION
_____

This matter is before the Court upon DDR SAU Nashville Willowbrook, LLC's (hereinafter "Landlord") complaint for possession of real property located at 61 East Thompson Lane, Nashville, Tennessee (hereinafter "Property"), and for a judgment against R&M Images, Inc., d/b/a CiCi's Pizza (hereinafter "R&M") for unpaid rents or the value of its occupancy since it began operating from the Property in 2009. In response, R&M asserts

that the Landlord's claims are barred by laches and/or equitable estoppel, and R&M seeks damages against the Landlord for loss of revenues caused by the Landlord's failure to lease the Property under the terms of this Court's prior orders.[1] For the following reasons, which represent the Court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. P. 7052, the Court finds that the Landlord is entitled to unpaid rents and that R&M is not entitled to any damages.

## I. FINDINGS OF FACT

The debtor operated a CiCi's Pizza restaurant on the Property. On October 27, 2008, the debtor filed its voluntary Chapter 11 petition. Thereafter, on August 15, 2009, the U.S. Trustee appointed Gary M. Murphey (hereinafter "Trustee") to serve as the Chapter 11 Trustee in the bankruptcy case. The Court approved the appointment on August 18, 2009. On November 19, 2009, the Trustee filed an expedited motion for the approval of assignment of unexpired lease and an expedited motion to sell substantially all of the estate assets. The Asset Purchase Agreement provided that R&M would purchase the franchise and assume the debtor's lease on the real property. The rent would stay the same as under the debtor's lease, however, the first three months would be rent free with the provision that the lease be

---

[1] At trial, R&M conceded that it no longer wished to remain on the Property. Accordingly, on March 21, 2012, the Court entered an Order directing R&M to vacate the premises on or before April 16, 2012.

2 - U.S. Bankruptcy Court, M.D. Tenn.

extended an additional three months. Default amounts owed by the debtor under the lease were to be forgiven as of the closing date for $10.

The Landlord did not participate at anytime during the process, and the Asset Purchase Agreement specifically provided that R&M was required to work out an agreement with the Landlord regarding rental obligations. The Trustee's motions were granted by the Court on November 25, 2009. David W. Houston, IV (hereinafter "Mr. Houston") represented the Trustee in the bankruptcy proceedings. He testified that the Trustee tried to get the Landlord involved in the process for several months but was unsuccessful. Mr. Houston further testified that while he was certain that the Landlord received notice of the motions, the Landlord remained unresponsive. R&M completed its purchase of the franchise and certain personal property used to operate a CiCi's Pizza restaurant through the Chapter 11 Trustee on November 18, 2010. Mr. Houston testified that Ronald Neff (hereinafter "Mr. Neff"), the owner of R&M, was aware of the circumstances regarding the Landlord but chose to go forward with the sale. Moreover, Mr. Houston testified that Mr. Neff was never told that the Landlord could be forced to accept the terms of the lease. Mr. Neff testified that he believed that an agreement had been reached with the Landlord. Regardless, it is uncontested that R&M has never had a lease agreement with the Landlord.

Despite having no lease agreement, R&M operated the CiCi's restaurant at the Property, beginning on December 1, 2009. The sale was completed on November 18, 2010,

3 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:11-ap-00511    Doc 38    Filed 05/16/12    Entered 05/16/12 08:37:58    Desc Main
Document      Page 3 of 11

and three months later, Mr. Neff estimated common area maintenance (hereinafter "CAM") charges and sent a check for $8700 to the Landlord to cover rent for the partial month of February 2011 and for the month of March 2011. After a representative of the Landlord notified Mr. Neff that R&M owed $200,000, Mr. Neff stopped payment on the check and contacted an attorney. R&M has not paid any rent for the location, and the Landlord has not received any rent or compensation for the use of the Property since prior to January 2010.

Mr. Neff testified the Landlord's failure to sign a lease agreement effectively precluded R&M from making necessary upgrades to the location and from investing in any advertizing or promotion of the location. He estimated R&M's total losses at this location to be in excess of $120,000.

The Landlord finally filed a complaint in state court to remove R&M from the premises on August 16, 2011. This action was removed to the Bankruptcy Court on September 26, 2011.

## II.  DISCUSSION

### A.  WHETHER A LEASE EXISTS

The first issue is whether R&M has ever had a lease with the Landlord for use of the Property.  It is undisputed that R&M does not have, and has never had, a lease agreement with the Landlord.  Moreover, despite what Mr. Neff believed, the approved Asset Purchase Agreement states that as a condition precedent, R&M "shall have reached an agreement with the landlord(s) on the rental obligations."

When interpreting a contract, "the words expressing the parties' intentions should be given their usual, natural and ordinary meaning." ***Taylor v. White Stores, Inc.,*** 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985) (citation omitted).  A "'condition precedent in the law of contracts may be a condition which must be performed before the agreement of the parties shall become a binding contract *or it may be a condition which must be fulfilled before the duty to perform an existing contract arises*.'  As such, no liability arises under the contract until such time as the condition precedent is fulfilled." ***Allison v. Hagan,*** 211 S.W.3d 255, 260 (Tenn. Ct. App. 2006) (emphasis in original) (citations omitted).

It is unclear why R&M decided to go through with the sale without assuring that this condition precedent was met or why the Landlord did not engage in the bankruptcy proceedings to protect its interest.  Regardless, there was no lease agreement reached

between the parties nor did the approval of the Asset Purchase Agreement create an obligation of the Landlord to enter into a lease agreement with R&M.

## B. RENTS OWED

The second issue is what amount does R&M owe the Landlord for use of the property. "Generally, the fair market value is the price at which a willing buyer will pay a willing seller when neither party is compelled to buy or sell the property." *In re DVI, Inc.*, 308 B.R. 703, 708 (Bankr. D. Del. 2004) (citing *United States v. Cartwright*, 411 U.S. 546, 551 (1973)). "The term 'fair rental,' like the term 'fair market value,' reflects the amount at which property would change hands between a willing lessee and a willing lessor, neither being under any compulsion to enter into the transaction and both having reasonable knowledge of the relevant facts." *Razavi v. Comm'r of Internal Revenue,* 74 F.3d 125, 127 (6th Cir. 1996).

The lease between the debtor and the Landlord provided for payment of rent in the amount of $6,300 per month, plus taxes, CAM charges, real estate taxes, and insurance, making the average monthly bill $7,801.70. This amount represents a rental value of $18 per square foot of space. At the hearing, the Landlord relied upon R&M's willingness to assume the lease in this amount as proof of the fair market rental value of the Property.

R&M presented the expert testimony of Patrick McGuigan, a real estate appraiser in the area. Mr. McGuigan's testimony was credible and thorough. He reviewed four comparable leased spaces and applied several factors to determine that the fair market rental value of the Property was $11 per square foot, which translates into $3850 per month in rent. Mr. McGuigan attempted but was unsuccessful in contacting the management for the Landlord to ascertain information regarding rents for space located in the same shopping center as the debtor. Mr. McGuigan did testify that the shopping center was only 57% occupied. Robert W. Pierce, the Landlord's current property manager, testified that $18 per square foot was the normal rent for this shopping center. However, Mr. Pierce did not take into account the size of the other spaces being leased at $18 per square foot. According to the Rent Roll Summary introduced into evidence by the Landlord, the other spaces leased at that price are all significantly smaller, and according to Mr. McGuigan's testimony, the smaller the space, the higher the price per square foot.

Based on the proof presented at trial, in particular, the expert testimony of Mr. McGuigan, the Court finds that the market value of the leased property is $11 per square foot or $3850 per month, in addition to the $1501.70 in taxes, CAM charges, real estate taxes, and insurance, which was unrefuted.

In connection with this issue is how many months of rent should R&M be required to pay. R&M concedes that it owes rent from part of February 2011 forward. The Landlord

7 - U.S. Bankruptcy Court, M.D. Tenn.

seeks rent from when R&M first occupied the property in December 2009. Neither party is correct. The Landlord did not have a lease with R&M, and whatever lease it had with the debtor was property of the estate and under the control of the Trustee until the sale closed. Hence, R&M could only be acting on behalf of the Trustee prior to the closing on November 18, 2010. Any remedies for these unpaid rents should have been pursued through the bankruptcy and prior to the Trustee's final report and the closing of the bankruptcy case. This leaves the three-month period which R&M erroneously believed was rent free. Again, the Court points out that there is no lease between the Landlord and R&M. R&M chose to go forward with the sale even though a lease had not been signed, and without an agreement between the relevant parties, R&M is not entitled to the benefit of three months free rent.

Based on these findings, the Landlord is entitled to unpaid rents from November 18, 2010, through the end of February 2012, for a total of $82,594.57. The Court reached this amount based on the following calculations:

$3850 (rent) + $1501.70 (expenses) = $5351.70 per month.
$5351.70 ÷ 30 days = $178.39 per day.
$178.39 x 13 days in November 2010 = $2319.07.
$5351.70 x 15 months (December 2010 through February 2012) = $80,275.50.
$2319.07 (13 days) + $80,275.50 (15 months) = $82,594.57.

## C. EQUITABLE REMEDIES

R&M asserts that the Landlord's claims should be barred by the doctrine of laches and equitable estoppel.

The defense of laches "requires an unreasonable delay that prejudices the party seeking to employ laches as a defense, and it depends on the facts and circumstances of each individual case." ***Dennis Joslin Co., LLC v. Johnson***, 138 S.W.3d 197, 200 (Tenn. Ct. App. 2003) (citation omitted). The essential elements of equitable estoppel as related to the party estopped are:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

***Osborne v. Mountain Life Ins. Co.,*** 130 S.W.3d 769, 774 (Tenn. 2004) (citation omitted).

As related to the party claiming the estoppel, the essential elements are:

> (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

***Id.***

The Court finds that neither of these doctrines should be applied in this case. It is difficult to comprehend why the Landlord did not act sooner in protecting its rights, but it is equally difficult to understand why R&M agreed to the sale without ensuring that the condition precedent of obtaining a lease agreement was met. Mr. Neff testified that the purchase of the franchise was the most important part of the agreement and that he was not sure whether the restaurant would stay at the location beyond the terms of the proposed lease. This begs the question of why R&M did not cut its losses early on and find a new location. Neither party's actions were particularly diligent, and this Court refuses to apply doctrines of equity to the circumstances of this case.

### D. R&M DAMAGES

Finally, R&M asserts that it is entitled to damages based on the Landlord's failure to sign a lease pursuant to the orders of this Court. The Court finds that R&M has failed to show that it has any right to damages. As explained above, the Asset Purchase Agreement approved by this Court required that R&M obtain a lease agreement with the Landlord. This condition precedent did not occur, and yet, R&M chose to go forward with the sale. Any damages suffered by R&M were caused by its decision to remain in possession of the leased property without the benefit of a lease.

## III.  CONCLUSION

For the reasons stated above, the Court finds that the Landlord is entitled to unpaid rents in the amount of $82,594.57.  The Court further finds that R&M is not entitled to damages.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page**

This Order has Been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.